947 F.2d 341
 60 USLW 2247, 35 Soc.Sec.Rep.Ser. 299,
Unempl.Ins.Rep. (CCH) P 16243A, 2 NDLR P 110
 Marcia C. BUNNELL, Plaintiff-Appellee,
v.
Louis W. SULLIVAN,* Secretary of Health and
Human Services, Defendant-Appellant.
Arthur RICE, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 Nos. 88-4179, 88-4225.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 23, 1991.
Decided Oct. 1, 1991.
 
 Ralph Wilborn, Eugene, Or., for plaintiff-appellant.
 Steven Gompertz, Arcata, Cal., for plaintiff-appellee.
 Howard S. Scher, Atty., Appellate Staff, Dept. of Justice, Washington, D.C., for defendant-appellee.
 Gary F. Smith, Woodland, Cal., for amici curiae Legal Services of Northern California, Inc., and National Sr. Citizens Law Center.
 Appeal from the United States District Court for the Western District of Washington.
 Appeal from the United States District Court for the District of Oregon.
 Before TANG, SCHROEDER, FLETCHER, PREGERSON, REINHARDT, BEEZER, WIGGINS, KOZINSKI, THOMPSON, O'SCANNLAIN and TROTT, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge, joined by TANG, SCHROEDER, FLETCHER, PREGERSON, REINHARDT and BEEZER, Circuit Judges:
 
 INTRODUCTION
 
 1
 We granted a rehearing en banc in Rice v. Sullivan, 912 F.2d 1076 (9th Cir.1990), and Bunnell v. Sullivan, 912 F.2d 1149 (9th Cir.1990), to determine the appropriate standard for evaluating subjective complaints of pain in Social Security disability cases. Bunnell v. Sullivan, 925 F.2d 1236 (9th Cir.1991). We conclude the standard enunciated in Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986), is a proper interpretation of the relevant law, and thus we overrule the concurring opinion in Bates v. Sullivan, 894 F.2d 1059 (9th Cir.1990), which held to the contrary. Relying on the Bates concurrence, the Rice and Bunnell panels rejected the claimants' contentions that the administrative law judge ("ALJ") in each of their cases applied an erroneous standard to evaluate their pain. Accordingly, we remand both cases to the district courts for remand to the Secretary for a determination of the claimants' disabilities consistent with this opinion.
 
 FACTS AND PROCEEDINGS
 
 2
 The panels in Rice and Bunnell sufficiently set forth the facts of each case. See Rice, 912 F.2d at 1078-80; Bunnell, 912 F.2d at 1150-51. We only briefly summarize those facts here.
 
 The Rice Case
 
 3
 Arthur J. Rice submitted medical findings that he suffers from fibrositis. Apparently, the diagnosis of fibrositis involves a process of exclusion and a "testing of certain 'focal tender points' on the body for acute tenderness." See Preston v. Secretary of Health and Human Servs., 854 F.2d 815, 817-18 (6th Cir.1988) (describing fibrositis). Fibrositis can cause muscle and musculoskeletal pain. Id. at 817.
 
 
 4
 Rice filed an application for Title II disability insurance benefits, complaining of severe and constant pain in his shoulders, back, and legs, as well as temporal headaches. Dr. Gell, at the request of the Secretary of Health and Human Services ("Secretary"), examined Rice. Dr. Gell concluded Rice was suffering from fibrositis, but noted "[m]ost patients are not totally disabled with this diagnosis."
 
 
 5
 The first ALJ found that Rice was suffering from a "severe impairment," but rejected Rice's testimony concerning his pain because the ALJ found Rice's testimony was " 'not fully credible and [did] not establish the existence of the disabling pain alleged in light of the objective medical evidence. [Rice]'s allegation of pain [was] not consistent with the medical signs and findings.' " Rice, 912 F.2d at 1079. A second ALJ also rejected Rice's claim after reconsidering Rice's claim in light of new evidence. This ALJ discredited Rice's complaints of disabling pain because they were not "justified after thorough and repeated medical evaluations in all relevant areas of specialty."
 
 The Bunnell Case
 
 6
 Marcia C. Bunnell applied for supplemental security income benefits under Title XVI. Bunnell produced medical evidence that she suffers from multiple hereditary exostoses. "Exostoses are bony growths projecting outward from the surface of a bone, characteristically capped by cartilage ... result[ing] in the development of valgus, i.e., bent outward, ankles." Bunnell, 912 F.2d at 1150. Bunnell testified she suffered back pain "all day and all night," which prevented her from sitting "for prolonged periods" or being in a "stationary position for more than 15 to 20 minutes." The ALJ found Bunnell's claim of disabling pain to be not credible because it was not "supported by the medical evidence of record." Id. at 1154.
 
 DISCUSSION
 
 7
 In both Rice and Bunnell, the ALJs disregarded the claimants' allegations of disabling pain because the claimants failed to present objective medical findings to fully corroborate the severity of pain alleged. Relying on the concurring opinion in Bates, the Rice and Bunnell panels upheld the Secretary's denial of disability benefits. We conclude the concurring opinion in Bates misconstrued the relevant law, and thus erroneously rejected the standard for evaluating pain as adopted by this circuit in Cotton.
 
 
 8
 Three competing standards have evolved for evaluating allegations of disabling pain. One standard is the standard proposed by Senators Levin and Cohen in a bill which was defeated when Congress adopted the 1984 Social Security Disability Benefits Reform Act discussed below. This standard (the "Levin-Cohen standard") would allow a finding of disability without requiring the claimant to produce medical evidence of an underlying impairment causing the pain. See 130 Cong.Rec. S6214 (daily ed. May 22, 1984) (statement of Senator Cohen). This standard has been described as permitting a finding of disability based solely on subjective complaints of disabling pain. See id.; see also Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1213-14 (11th Cir.1991) (describing solely subjective standard). The Levin-Cohen standard has never been embraced by Congress, the Secretary, or this circuit.
 
 
 9
 Another standard for evaluating pain in Social Security disability cases is the standard we articulated in Cotton. This standard (the "Cotton standard") requires the claimant to produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain. Cotton, 799 F.2d at 1407. When this evidence is produced, the Cotton standard does not require medical findings that support the severity of pain and, thus, the adjudicator may not discredit the claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence. Id.
 
 
 10
 The Bates concurrence proclaimed yet a third standard. This standard not only requires objective medical evidence of the underlying impairment, but also requires objective medical evidence to corroborate the severity of the pain alleged. Bates, 894 F.2d at 1072. We reject this standard because it is inconsistent with the relevant statutory language, the legislative history, the Secretary's regulations, the Secretary's interpretation of the regulations, and our pre-Bates case law.
 
 
 11
 In 1984, Congress enacted the Social Security Disability Benefits Reform Act, Pub.L. No. 98-460, 98 Stat. 1794 (1984) (the "1984 Act"). Among other objectives, Congress intended the 1984 Act to clarify the law regarding eligibility for disability benefits. Prior to its enactment, the statutory section governing the determination of a claimant's disability, 42 U.S.C. § 423(d)(1)(A), (d)(3) (1982), did not address the appropriate standard for evaluating pain.[1]
 
 
 12
 In the 1984 Act, Congress amended section 423 and set forth a temporary standard for evaluating a claimant's subjective allegations of disabling pain. 42 U.S.C. § 423(d)(5)(A) (1988) (the "1984 amendment"). This standard was to govern disability claims until January 1, 1987, pending a study by the Secretary's "Commission on the Evaluation of Pain." H.R.Conf.Rep. No. 1039, 98th Cong., 2d Sess. 28-29 (1984), reprinted in 1984 U.S.Code Cong. & Admin.News 3086-87. When the 1984 amendment was adopted, Congress intended to consider at a later date further legislation to clarify the standard for evaluating pain after reviewing the anticipated Commission report. S.Rep. No. 466, 98th Cong., 2d Sess. 24 (1984) ("S.Rep. No. 466"). Congress has yet to promulgate further legislation.
 
 
 13
 Pursuant to the 1984 amendment, a claimant will not be considered disabled based solely on subjective complaints of pain. The claimant must produce objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged...." 42 U.S.C. § 423(d)(5)(A) (1988). As amended, subsection 423(d)(5)(A) reads in part:
 
 
 14
 An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.
 
 
 15
 Id.
 
 
 16
 Congress' primary purpose in enacting the 1984 Act and amending section 423 was to promote a national, uniform standard for the evaluation of pain and to eliminate inconsistencies in the standard as applied by various levels of adjudicators. S.Rep. No. 466 at 1; see also id. at 23 ("Congress has indicated that it attaches high importance to the administration of the disability program with a high degree of national uniformity."). The House Report notes concern that "a fragmented standard is now in effect for using subjective evidence of pain, depending on whether the beneficary [sic] has pursued his claim through the ALJ or district court level."[2] H.R.Rep. No. 618, 98th Cong., 2d Sess. 13, reprinted in 1984 U.S.Code Cong. & Admin.News 3051. At the same time, Congress recognized the inability of medical science to objectively verify the extent of pain experienced by an individual. See id. If Congress adopted a purely objective standard, truly disabled persons would be denied benefits. See id.
 
 
 17
 To balance these considerations, Congress used language in the 1984 amendment similar to language in the Secretary's regulations. See S.Rep. No. 466 at 24; 20 C.F.R. §§ 404.1529 and 416.929 (1983). These regulations require a claimant to present medical findings establishing an impairment. Once the claimant satisfies this prerequisite, the adjudicator must then consider the claimant's alleged severity of pain. Sections 404.1529 and 416.929 read in full:
 
 
 18
 If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms.
 
 
 19
 The Secretary's policy was clarified by the settlement agreement in Polaski v. Heckler, 751 F.2d 943 (8th Cir.1984), vacated on other grounds, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986). See Luna v. Bowen, 834 F.2d 161, 165 (10th Cir.1987). In this settlement agreement, the Secretary clearly stated that objective medical findings need not support the severity of pain alleged:
 
 
 20
 Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone.... [D]irect medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced.... The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints....
 
 
 21
 Luna, 834 F.2d at 165 (quoting Polaski, 751 F.2d at 948).
 
 
 22
 Our task in interpreting the 1984 amendment and the Secretary's regulations is to determine the nexus intended by Congress between the objective medical findings establishing an impairment and the severity of the alleged pain. See Luna, 834 F.2d at 164. In Cotton, we concluded " 'Congress clearly meant that so long as the pain is associated with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability.' " Cotton, 799 F.2d at 1407 (quoting Howard v. Heckler, 782 F.2d 1484, 1488 n. 4 (9th Cir.1986)). We subsequently applied this standard in Varney v. Secretary of Health and Human Servs., 846 F.2d 581, 583-84 (9th Cir.1988), and Gamer v. Secretary of Health and Human Servs., 815 F.2d 1275, 1279 (9th Cir.1987). Accordingly, under the Cotton-Varney-Gamer precedent, once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain. Cotton, 799 F.2d at 1407. Further, although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion. Id.
 
 
 23
 These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not "arbitrarily discredit a claimant's testimony regarding pain." Elam, 921 F.2d at 1215. As we have previously recognized, a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983). "The failure of ALJs to make [specific] findings in disability cases is among the principal causes of delay and uncertainty in this area of the law." Id. (quoting Chiappa v. Secretary of Dep't of HEW, 497 F.Supp. 356, 358 (S.D.N.Y.1980)).
 
 
 24
 To assist ALJs in making the required findings, the Secretary issued Social Security Ruling ("SSR") 88-13.[3] Consistent with the 1984 amendment, the Secretary's regulations, and our case law, SSR 88-13 does not require medical findings to corroborate the severity of alleged pain.[4] Once the claimant establishes a medical impairment reasonably likely to be the cause of the pain, the Secretary directs the ALJ to consider "all of the available evidence" because the Secretary recognizes that "pain is subjective and not susceptible to measurement by reliable techniques." SSR 88-13.
 
 
 25
 SSR 88-13 lists a number of factors an adjudicator must consider to determine the credibility of the claimant's allegations of disabling pain. These factors are:
 
 
 26
 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
 
 
 27
 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
 
 
 28
 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
 
 
 29
 4. Treatment, other than medication, for relief of pain;
 
 5. Functional restrictions; and
 
 30
 6. The claimant's daily activities.
 
 
 31
 Id.
 
 
 32
 The SSR 88-13 factors ensure that the determination of disability is not a wholly subjective process, turning solely on the identity of the adjudicator. See Luna, 834 F.2d at 165. For instance, if the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). Another relevant factor may be "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Id. An adjudicator may also use "ordinary techniques of credibility evaluation" to test a claimant's credibility. Id. at 604 n. 5. So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence. But the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.
 
 
 33
 The reason for this is clear. If we interpreted the 1984 amendment and the regulations to require medical evidence to support the degree of pain, we "would render meaningless" the requirement that an adjudicator must consider all relevant evidence. Luna, 834 F.2d at 165. If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings. We rejected this more restrictive standard, because, clearly, "Congress did not intend to render the claimant's pain testimony irrelevant." Cotton, 799 F.2d at 1407.
 
 
 34
 In eschewing the Cotton standard, the Bates concurrence required objective medical evidence to support that for which it is quite possible no objective medical evidence can be produced. "[P]ain is a completely subjective phenomenon" and "cannot be objectively verified or measured." Fair, 885 F.2d at 601. Moreover, the level of pain caused by an impairment varies significantly among individuals "according to the pain threshold and stamina of the individual victim." Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir.1986). As we have stated, when Congress amended section 423 to specifically address pain, it recognized that pain may be disabling and that individuals truly suffering from disabling pain are entitled to disability benefits.[5] We cannot conclude that Congress intended to require objective medical evidence to fully corroborate the severity of pain while aware of the inability of medical science to provide such evidence. Our cases, except for the Bates concurrence, have never adopted this view.
 
 
 35
 The Bates concurrence took the position that Cotton is inconsistent with Nyman v. Heckler, 779 F.2d 528 (9th Cir.1985), Miller v. Heckler, 770 F.2d 845 (9th Cir.1985), and Taylor v. Heckler, 765 F.2d 872 (9th Cir.1985). Bates, 894 F.2d at 1068-70. We disagree. We do not interpret the holdings in these three cases as requiring medical corroboration of the degree of pain.
 
 
 36
 In Nyman, the claimant asked the court to apply the Eighth Circuit's standard for evaluating pain. Nyman, 779 F.2d at 531. This standard is the same as that adopted by Cotton. See Cotton, 799 F.2d at 1407. The Nyman court did not reject this standard, as asserted by the Bates concurrence. Instead, the Nyman court applied the standard and concluded, even under this standard, the claimant did not present credible evidence of disabling pain. Nyman, 779 F.2d at 531. Thus, we cannot interpret Nyman as holding medical evidence must support the alleged severity of pain.
 
 
 37
 In Taylor and Miller, consistent with Cotton, we rejected the claims for disability because the claimant failed to produce medical evidence of an underlying impairment. In Taylor, we stated: "A claimant's subjective complaint of pain is by itself insufficient to establish disability." Taylor, 765 F.2d at 876 (emphasis added). We cited Gallagher v. Schweiker, 697 F.2d 82 (2d Cir.1983), as support for this statement. In Gallagher, the Second Circuit clarified the applicable standard for evaluating pain: "The pain need not be corroborated by objective medical findings, but some impairment must be medically ascertained...." * Id. at 84. This is the Cotton standard, and it is in accord with case law from other circuits that have considered the standard to be applied in evaluating complaints of pain. See Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 21 (1st Cir.1986); Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir.1983); Green v. Schweiker, 749 F.2d 1066, 1070-71 (3d Cir.1984); Walker v. Bowen, 889 F.2d 47, 49 (4th Cir.1989); Anderson v. Sullivan, 887 F.2d 630, 633 (5th Cir.1989); Blankenship v. Bowen, 874 F.2d 1116, 1123 (6th Cir.1989); Penn v. Sullivan, 896 F.2d 313, 315 (8th Cir.1990); Luna v. Bowen, 834 F.2d 161, 164-65 (10th Cir.1987); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir.1991); Brown v. Bowen, 794 F.2d 703, 706 n. 4 (D.C.Cir.1986).
 
 
 38
 We conclude that Cotton correctly interpreted the 1984 amendment, its legislative history, the regulations and applicable precedent. Because the panels in Rice and Bunnell followed the Bates concurrence, instead of the Cotton-Varney-Gamer line of cases in analyzing the claimants' subjective complaints of pain, we modify the Rice and Bunnell panel opinions as follows: In Rice v. Sullivan, 912 F.2d 1076 (9th Cir.1990), we withdraw part V of the panel opinion and vacate the panel's affirmance of the district court's decision. In Bunnell v. Sullivan, 912 F.2d 1149 (9th Cir.1990), we withdraw part II.B of the panel opinion and vacate the panel's reversal of the district court's decision.
 
 
 39
 With regard to the underlying district court decisions, the district court decision in Rice is vacated and the case is remanded to the district court with directions to remand to the Secretary; the district court decision in Bunnell remanding the case to the Secretary is affirmed. Further proceedings in both cases are to be in accord with this opinion.
 
 
 40
 Case No. 88-4225 (Rice ), VACATED and REMANDED.
 
 
 41
 Case No. 88-4179 (Bunnell ), AFFIRMED.
 
 
 42
 KOZINSKI, Circuit Judge, with whom WIGGINS, O'SCANNLAIN and TROTT, Circuit Judges, join, concurring only in the judgment.
 
 
 43
 While concessions made by government counsel at oral argument require that I join in remanding the two cases before us, I can agree with almost nothing else the majority says in its opinion. As I explain below, the opinion is supported by neither the applicable statutes nor the regulations; it is an exercise of common-law decisionmaking spuriously imposed on a complex regulatory scheme. My distinguished colleagues may be convinced they are doing the right thing and, in some cosmic sense, perhaps they are. But in our tripartite system of government, the judiciary does the right thing by applying statutes and regulations as written[1] and letting the political branches resolve the intractable policy conflicts that inevitably arise in the implementation of social welfare legislation.
 
 
 44
 * A. While the majority reaches out--wholly gratuitously--to overrule Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir.1990) (Wallace, C.J., and Wright, J., concurring),[2] it never comes to grips with that opinion's analysis of the statute, the applicable regulations and the legislative record pertaining to the issue of pain. I can do no better than to quote that analysis at length:
 
 
 45
 Prior to its enactment of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, 98 Stat. 1794 (the Reform Act), Congress had not specifically addressed whether an individual's subjective pain could be considered disabling. Congress, however, had clearly stated:
 
 
 46
 The term "disability" means(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
 
 
 47
 42 U.S.C. § 423(d)(1) (1983) (emphasis added). In section 423(d)(3), the statute further stated:
 
 
 48
 For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.
 
 
 49
 (Emphasis added.) While this statutory language does not mention subjective pain testimony, it surely indicates that Congress intended that an alleged impairment had to be "medically determinable" before it could be considered disabling.
 
 
 50
 The Secretary had also promulgated a regulation concerning pain which provided:
 
 
 51
 If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause for the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.
 
 
 52
 20 C.F.R. §§ 404.1529 and 416.929 (1983) (emphasis added). Although similar to the statutory language, the Secretary's regulation further clarified the importance of medical evidence of pain by requiring that the medical condition alleged to cause the complained of pain be of the type "reasonably expected to produce" that pain. The wording of the regulation was clear: a claimant would never be found disabled unless he could point to a medical condition which caused him to suffer from the degree of pain which he alleged.
 
 
 53
 Given the plain language of the statute and the Secretary's regulation, our task should have been: where a claimant's allegation of pain were not corroborated by medical evidence, we would conclude from the record as a whole that there was substantial evidence justifying the Secretary's finding that the claimant was not disabled.
 
 
 54
 Id. at 1064-65.
 
 
 55
 As Bates points out, however, the "plain language of the statute and the Secretary's regulations" was not enough; courts still chose to ignore the direction of the political branches and accorded great weight to a claimant's subjective allegations of pain. See 130 Cong.Rec. S6211 (daily ed. May 22, 1984) (criticizing Polaski v. Heckler, 585 F.Supp. 1004, 1008-09 (D.Minn.), aff'd, 739 F.2d 1320 (8th Cir.), ordered remanded on other grounds, 751 F.2d 943 (8th Cir.1984), vacated, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986)). This judicial recalcitrance led Congress to enact 42 U.S.C. § 423(d)(5)(A) in 1984:
 
 
 56
 An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques ... must be considered in reaching a conclusion as to whether the individual is under a disability.
 
 
 57
 (Emphasis added). The focus of that amendment, as Bates emphasized, was clear:
 
 
 58
 Thus, according to the amended statute, in order to prove that pain is disabling, "there must be medical signs and findings ... which show the existence of a medical impairment ... which could reasonably be expected to produce the pain ... alleged." Significantly, the language of the statute uses a definite article, referring to "the pain" alleged. It does not refer to "some of the pain" alleged by the claimant, nor does it refer to medical impairments expected to produce "a certain amount of pain," nor to "excess pain." See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986) (Cotton ). Thus, read in its most direct and plain sense, section 423(d)(5)(A) requires evidence of a medical condition which "could reasonably be expected to produce" the actual pain, in amount and degree, alleged by the claimant. Unless a claimant can produce "objective medical evidence of" such a medical impairment, he or she is not disabled under the statute.
 
 
 59
 Bates, 894 F.2d at 1066. Furthermore, the Bates opinion exhaustively reviewed the legislative record, demonstrating beyond dispute that Congress approved of the regulations and that it meant what it said in the statute. Supported by numerous quotations, Bates concluded:
 
 
 60
 Plainly, Congress concurred in the Secretary's regulations and intended a claimant to produce medical evidence corroborating the "severity" of the pain that he alleged.
 
 
 61
 Indeed, the comments in the legislative record are unanimous in concluding that section 423(d)(5)(A) requires that a claimant's allegation of subjective pain, including the severity of the alleged pain, be confirmed by objective medical evidence.... [T]he legislative history confirms that the statutory language means just what it says: the Secretary may reject allegations of pain unless the claimant is able to point to a medical condition which could reasonably be expected to produce that pain.
 
 
 62
 Id. at 1066-68.
 
 
 63
 This careful analysis by Chief Judge Wallace and Judge Wright commands a response, but the majority does not join issue. While the majority dutifully quotes the language of the statute and regulations, Majority at 344 n. 1, 344-45, it does not analyze the language it quotes, and it certainly does not cite or address the legislative record Bates so persuasively marshals. The majority overrules Bates and approves Cotton, but does not explain why Bates was wrong in concluding that "Congress appears to have specifically rejected the position taken by Cotton." Bates, 894 F.2d at 1068.
 
 
 64
 B. Bates aside, it is clear that the majority reaches its conclusion by misreading the applicable regulations. As Bates noted and the majority acknowledges, the regulations in question are deserving of special deference because they have explicit congressional approval. The majority quotes these regulations, but it does not make even a colorable attempt to analyze them. Were it to do so, it would learn that the regulations are consistent with Bates and wholly at odds with our decision today.
 
 
 65
 The relevant language of 20 CFR §§ 404.1529 and 416.929 states that the Social Security Administration "will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms" (Emphasis added). This language articulates a two-pronged objective standard: To be found medically disabled, the claimant must first present proof of a "medical condition" and must next present proof that his medical condition is such that it "could be reasonably expected" to produce disabling pain.
 
 
 66
 Purporting to apply sections 404.1529 and 416.929, the majority simply drops the second of these requirements, stating that the claimant need only prove that his alleged pain is "associated with a clinically demonstrated impairment." Majority at 345 (quoting Cotton, 799 F.2d at 1407). Thus, in the eyes of the majority, the regulations may require a claimant to produce medical evidence of his underlying impairment, but they free him from having to produce medical evidence of the alleged severity of his pain. But if that is all the regulations require, why would the Secretary use the phrase "a medical condition that could reasonably be expected to produce" disabling pain? The majority sayeth not. As the majority reads the regulations, this language is rendered a nullity.
 
 
 67
 Equally unaccounted for in the majority opinion is language in another portion of the regulations which states that "[t]he effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom." 20 CFR §§ 404.1529 & 416.929 (emphasis added). Once again, the regulations place the burden on the claimant to show a causal link between his medical condition and the disabling pain he alleges. Merely showing that the pain is "associated" with a medical condition, as the majority holds, ignores this requirement. I respectfully suggest that any interpretation of the regulations that overlooks such key phrases cannot be correct.
 
 II
 
 68
 Having cut itself free of the applicable statute and regulations, the majority relies instead on conjecture about what Congress could and could not have intended. Thus, the majority discards the standard clearly adopted by the statute and regulations because "[i]f an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings." Majority at 347. The majority also announces that " 'Congress did not intend to render the claimant's pain testimony irrelevant,' " id. (quoting Cotton, 799 F.2d at 1407), and that Congress could not have "intended to require objective medical evidence to fully corroborate the severity of pain while aware of the inability of medical science to provide such evidence." Id.
 
 
 69
 The fact is, Congress and the SSA did precisely what the majority says they could not have meant to do. The statutory language is clear; the applicable regulations are clear; the congressional record, as detailed in Bates, is clear. Hard as it may be for my colleagues to believe, Congress actually made a hard policy judgment and directed the SSA to deny disability benefits in dubious cases. It may not be the policy judgment that makes sense to us, but we are not empowered to second-guess this judgment simply because we are incredulous that Congress chose the path it did.
 
 
 70
 An important clue that we have strayed from the path of statutory interpretation and wandered deep into the briar of policy comes from the fact that "excess pain"--the concept which lies at the heart of the majority's approach--is nowhere to be found in the statutes, the regulations or the extensive congressional debate on this issue. In fact, the phrase was invented in Cotton, where it is defined as "pain that is unsupported by objective medical findings." Cotton, 799 F.2d at 1407. Rather than following the clear mandate of Congress, the SSA and our prior caselaw--all of which are loyal to the view that such pain cannot support a disability determination--we held in Cotton that it was legal error for an ALJ to reject such "excess pain" testimony. We did not explain in Cotton where we found the concept of "excess pain" or why it had never surfaced before.
 
 
 71
 "Excess pain" is a concept only a lawyer could love: vague, statutorily unsupported, metaphysically incongruous. As the phrase implies, "excess pain" presupposes that there is some normal level of pain associated with a particular impairment and that some individuals, by virtue of personal idiosyncrasies, suffer more than their fair share. Pain, however, like beauty, is entirely subjective; it is impossible to compare one person's suffering with that of another, much less determine the "correct" amount of pain someone should feel because of a particular impairment. See generally L. Wittgenstein, Philosophical Investigations (1953). To one who suffers pain, any degree of it is too much; everyone justly feels that his pain exceeds an acceptable level. Yet, if Congress had wanted to make subjective testimony of pain conclusive of disability, it would surely have said so. In fact, it said exactly the opposite.
 
 
 72
 Our focus on some undefined (and undefinable) level of pain in excess of the norm does little more than give claimants a chance to circumvent the disability rules set up by Congress, as the grant or denial of benefits now turns on a wholly subjective and totally unverifiable circumstance, one to which no one but the claimant can speak. See Stewart v. Sullivan, 881 F.2d 740, 746 (9th Cir.1989) (Sneed, J., concurring) ("I am hard-pressed to describe what showing the Secretary must make to refute an excess pain claim. It is possible, of course, for the Secretary to enlist the investigatory resources of the FBI to ascertain the genuineness of these claims. This does not strike me as a reasonable course of action."). In fact, as each claimant experiences only his own pain, having no clue how it compares to the pain experienced by anyone else, the entire inquiry is absurd. Its only effect is to rob the Social Security disability system of the objectivity Congress has clearly declared it should have.
 
 
 73
 The cases that have endorsed this freewheeling concept of "excess pain"--starting with Cotton and continuing through our decision today--demonstrate a disturbing mistrust of an administrative agency that tries to follow its congressional mandate of holding disability claims up to scrutiny. They reflect a philosophy that anyone who claims entitlement should be awarded benefits unless the Secretary can prove otherwise. While this approach may have much to commend it, it is not that adopted by Congress, which put the burden of proving entitlement squarely on the claimant.
 
 
 74
 By endorsing this approach, the majority steps on one side of a difficult and sensitive policy issue, namely how to deal with the question of pain in disability cases. As we have recognized, because pain is subjective, it is easy to falsify or exaggerate claims thereof. See, e.g., Fair v. Bowen, 885 F.2d 597, 602 (9th Cir.1989). Decisions to grant or deny benefits thus "often hinge entirely on whether or not the claimant's description of what he is feeling is believed." Id. How to resolve this is a hard policy question, one that Congress has been struggling with for years. See 130 Cong.Rec. S6211-36 (Senate debate on 1984 amendment).
 
 
 75
 The difficulty in reaching a satisfactory solution lies in the intractable nature of the problem. Any rule of decision must strike a balance between two types of potential error--alpha and beta. See generally G. Keppell, Design and Analysis 65-66 (1973). For example, in the criminal context, the two types of error are unjust convictions of innocent persons (alpha errors) and wrongful acquittals of guilty ones (beta errors). In the Social Security disability context, the two types of error are wrongful denials of benefits to deserving claimants (alpha), and wrongful awards of benefits to undeserving claimants (beta).
 
 
 76
 Any rule of decision reflects a policy judgment as to the proper trade-off between alpha and beta errors. The rule of decision we've adopted in criminal cases tilts heavily away from alpha errors (erroneous guilty verdicts), embodying the popular notion that it is better for ten guilty persons to go free than to convict an innocent one. Even there, however, we do not adopt a rule that calls for absolute certainty. Rather, we accept as inevitable that some, although hopefully few, alpha errors will slip through; the occasional conviction of an innocent is the bitter price we pay for avoiding the wholesale acquittal of the guilty.
 
 
 77
 For disability determinations, Congress has adopted a rule of decision that reflects a particular concern about beta errors (wrongful awards of benefits). As always, there is a trade-off. Trying to hold down beta errors inevitably results in some alpha errors (wrongful denials of benefits). This is unfortunate indeed, but it reflects a policy judgment Congress made about the relative harm to the integrity of the social security disability insurance system from errors of a particular type.
 
 
 78
 Because wrongful grants of disability benefits are not appealable, beta errors never come to our attention; we see only the alpha errors. Our natural human tendency is to shift the rule of decision so as to minimize, or eliminate altogether, the type of error we do see. Because of the inevitable trade-off between the two types of error, however, a consequence of our tinkering is that we increase the number of beta errors, the type Congress was most concerned with avoiding, undermining the actuarial assumptions upon which the system is built.
 
 III
 
 79
 The final irony in the majority's opinion is that it is totally uncalled for in light of the posture of this case. At oral argument counsel for the government took the position that Social Security Ruling 88-13, which applies to ALJ evaluations of pain, adopts "a standard that is very much like this court's concerns in the Cotton-Varney line of cases" and sets forth a specific methodology by which ALJs must consider claims of pain that are not fully corroborated by objective medical evidence. Because this SSR was not available when the ALJs reached their decisions in these cases, the government's counsel conceded that remand was appropriate here.[3] In light of this concession, we have no occasion to consider whether the statute and the regulations require the Secretary to do that which he has conceded he's willing to do anyway.
 
 
 80
 Nonetheless, the majority does reconsider, and overrule, Bates. It eschews reliance on SSR 88-13 presumably because it does not consider the SSR binding. Majority at 346 n. 3. The majority is mistaken. While SSR 88-13 may not be binding on the courts, it is binding on the Secretary. See 20 CFR § 422.406(b)(1). If the Secretary chooses to apply a standard that is less rigorous than that envisioned by the statute and the regulations, he will be bound thereby during the course of the litigation.
 
 
 81
 By reaching beyond SSR 88-13, the majority denies the Secretary the flexibility to issue a superseding SSR and require adherence to the principle that pain testimony should be rejected to the extent it is unsupported by objective medical evidence. To this I cannot agree. Thus, although I concur in the majority's decision to remand, I cannot accept, let alone join, its reasoning.
 
 
 
 *
 Louis W. Sullivan is substituted for his predecessor, Otis R. Bowen, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1)
 
 
 [1]
 Subsections 423(d)(1)(A) and 423(d)(3) (1983) stated:
 (1) The term "disability" means--
 (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;
 ....
 (3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.
 
 
 [2]
 This concern reflects Senator Long's criticism of Polaski v. Heckler, 585 F.Supp. 1004 (D.Minn.), aff'd, 739 F.2d 1320 (8th Cir.), ordered remanded on other grounds, 751 F.2d 943 (8th Cir.1984), vacated on other grounds, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986). A careful review of Senator Long's remarks indicates that the Senator was not criticizing the particular standard applied by the district court. Rather, Senator Long's criticism was directed at the inconsistencies between the courts and the Secretary in the standard applied to evaluate pain. See 130 Cong.Rec. S6211 (daily ed. May 22, 1984)
 
 
 [3]
 The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy. See Paulson v. Bowen, 836 F.2d 1249, 1252 n. 2 (9th Cir.1988). The Secretary's interpretation of 20 C.F.R. §§ 404.1529 and 416.929 is found in SSR 88-13
 Although SSRs are not published in the federal register and "do not have the force of law," Quang Van Han v. Bowen, 882 F.2d 1453, 1457 & n. 6 (9th Cir.1989), we nevertheless give deference to the Secretary's interpretation of its regulations. See Martin v. OSHRC, --- U.S. ---, 111 S.Ct. 1171, 1175-76, 113 L.Ed.2d 117 (1991); Vista Hill Found. v. Heckler, 767 F.2d 556, 559-60 (9th Cir.1985). We must, however, "consider them with caution," and "will not uphold them if their application produces a result inconsistent with the statute and regulations." Vista Hill, 767 F.2d at 560.
 
 
 [4]
 SSR 88-13 provides in part:
 There are situations in which an individual's alleged or reported symptoms, such as pain, suggest the possibility of a greater restriction of the individual's ability to function than can be demonstrated by objective medical evidence alone. In such cases, reasonable conclusions as to any limitationson the individual's ability to do basic work activities can be derived from the consideration of other information in conjunction with medical evidence. This is consistent with court decisions which require that statements of the claimant or his/her physician as to the intensity and persistence of pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings are to be included in the evidence to be considered in making a disability determination.
 
 
 [5]
 The 1984 amendment, section 423(d)(5)(A), does not apply to determinations made after January 1, 1987. Pub.L. No. 98-460, § 3(a)(3), 98 Stat. 1799-1800 (1984). We do not agree, however, with the Bates concurrence that the "sunsetting" of section 423(d)(5)(A) affects the validity of the Cotton standard. See Bates, 894 F.2d at 1071-72. The concurrence in Bates took the position that the Cotton-Varney-Gamer line of cases interpreted only the 1984 amendment, and because the amendment had "sunsetted," only the Secretary's regulation remained as controlling law. However, as Judge Nelson pointed out in her dissent in Bunnell, Varney explicitly rested its analysis on an interpretation of the amendment and the regulations. Bunnell, 912 F.2d at 1156 (Nelson, J., dissenting) (citing Varney, 846 F.2d at 583). In addition, the regulations, and the Secretary's interpretation of those regulations, are identical to those existing at the time of the enactment of the 1984 amendment. Finally, it was never the purpose of the sunset provision in the 1984 amendment to affect applicable law. See S.Rep. No. 466 at 24
 
 
 [1]
 Unless, of course, they are unconstitutional, which no one claims is the case here
 
 
 [2]
 That we have no occasion to overrule Bates, or even address the complex statutory question presented there, is clear beyond reasonable dispute. See Section III infra
 
 
 [3]
 When asked if the Secretary would "have any trouble with sending the whole shootin' match back," counsel responded "[i]n these two cases, no."