15 F.3d 1089
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Gerald SCHULTE, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-56250.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 4, 1994.*
Decided Feb. 8, 1994.
 
 Before: SNEED, THOMPSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Gerald Schulte appeals the district court's grant of summary judgment affirming the Secretary of Health and Human Service's decision denying Schulte's application for Title II disability insurance benefits. The Administrative Law Judge (ALJ) found that Schulte was not disabled during the relevant period, August 15, 1987 through December 31, 1988. We have jurisdiction, 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Schulte argues that the ALJ erred in rejecting the opinion of Dr. Ronaghy, his treating physician, that Schulte was disabled. Dr. Ronaghy's testimony was controverted, and the ALJ's decision to reject his testimony will therefore be affirmed provided he made "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989) (quotation marks omitted). "Where medical testimony is conflicting ... it is the ALJ's role to determine credibility and to resolve the conflict." Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984). Because the ALJ previously found Schulte not to have been disabled prior to August 14, 1987, a decision from which Schulte did not appeal, Schulte bears the burden of showing that his impairments became more severe after that date. Brawner v. Secretary of Health & Human Servs., 839 F.2d 432, 433 (9th Cir.1988) (per curiam).
 
 
 4
 The ALJ gave several specific reasons for rejecting Dr. Ronaghy's opinion and finding Schulte capable of performing light or sedentary work. First, the ALJ observed that Dr. Ronaghy's opinion was not supported by his own findings or the results of Schulte's "bone scan, EMG study, extensive x-rays, or treadmill stress test." The ALJ placed particular emphasis on the fact that Dr. Ronaghy's only positive, objective finding of Schulte's physical status in the May 2, 1989 report was "[t]enderness and limitation of movement of the cervical and lumbar spine." And in his most recent report prior to the ALJ's ruling, Dr. Ronaghy stated that Schulte's "[r]ange of motion of the cervical spine was approximately ten to fifteen percent limited and the lumbar spine had a 20 to 30% range of movement." The ALJ took note of the x-rays "indicating the presence of congenital exostoses and chonondromalacia," but found it significant that Dr. Ronaghy admitted Schulte "has normal range of motion of both knee joints with the presence of only mild tenderness."
 
 
 5
 Second, the ALJ relied on Schulte's treatment records, covering a span of more than five years, from the Veterans Administration Medical Center (VA), that undercut Dr. Ronaghy's opinion. Schulte points out that the VA records show diagnoses of multiple hereditary osteochondromatosis, sacralization of the L5 vertebral body, and depression secondary to chronic pain. However, those records also show that a bone scan revealed no abnormalities in Schulte's spine; that his spine x-ray and EMG study were normal; and that Schulte had mild-to-moderate hearing loss and "fair" speech discrimination. The ALJ also found it significant that one of Schulte's VA doctors recorded a noticeable improvement in Schulte's posture and manner of walking upon being told he was rated as "normal" on an I.Q. test; this supports the ALJ's conclusion that Schulte's difficulties are, for the most part, psychosomatic.
 
 
 6
 Third, the ALJ relied on the findings of an examining physician, Dr. Eriks, who reported that Schulte's back motion was only "moderately limited;" that she detected no evidence of radiculopathy; and that Schulte had the "full range of motion in bilateral knees" and mild bilateral knee crepitations. Dr. Eriks also reported that Schulte was able to walk for short periods without a cane, a finding that is consistent with the ALJ's conclusion that during the relevant benefits period, Schulte was able to perform light work. Schulte correctly points out that Dr. Eriks's examination was an internal medicine, as opposed to orthopedic, evaluation, but he cites no authority for the proposition that the ALJ was thereby precluded from relying on Dr. Eriks's examination.
 
 
 7
 Fourth, the ALJ relied on the findings of Dr. Schillaci, a medical expert for the Social Security Administration (SSA), who reviewed the record, listened to Schulte's testimony, and opined that Schulte's impairments did not (either singly or in combination) meet the Secretary's impairments criteria. Schulte objects to the ALJ's reliance on Dr. Schillaci's testimony, since he retired from active practice in 1987 and didn't meet Schulte until the day of the hearing. This is a credibility question, however, and we defer to the ALJ's resolution of it. Allen, 749 F.2d at 579.
 
 
 8
 Fifth, the ALJ relied on evaluations of Schulte's mental status by two examining doctors. The ALJ took note of Dr. Bishop's finding that Schulte had a poor prognosis due to his personality disorder and obsessive-compulsive features. However, the ALJ also noted Dr. Bishop's explanation for Schulte's poor prognosis: his lack of motivation for treatment and comfort with the "life he has made for himself." The ALJ also discussed the findings of Dr. Proud, who reviewed the record and testified that Schulte's impairments did not (either singly or in combination) meet the Secretary's impairments criteria, and that Schulte's medical diagnosis was "general anxiety disorder," resulting in a slight restriction in his ability to complete tasks.
 
 
 9
 Schulte argues that the ALJ erred in failing to accord dispositive weight to Dr. Woodburn's opinion that Schulte, because of his severe depression, was unable to secure gainful employment. The ALJ discussed Dr. Woodburn's findings, but did not find they outweighed Dr. Bishop's and Dr. Proud's conclusions. We defer to the ALJ's resolution of this conflicting testimony. Id.
 
 
 10
 Sixth, the ALJ found Dr. Ronaghy's diagnosis incredible on the ground that he attributed Schulte's disability, in part, to his depression, but previously had told an SSA investigator that he was "not a specialist in psychiatry" and was "not qualified to comment on the mental status of a patient." The ALJ did not err in discounting Dr. Ronaghy's opinion as to Schulte's mental state on the ground that Dr. Ronaghy, by his own admission, was unqualified to comment on Schulte's mental condition. See Lombardo v. Schweiker, 749 F.2d 565, 566 (9th Cir.1984) (per curiam) (quoting Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir.1975) ("The medical opinion of specialists may be entitled to greater weight than that of general practitioners.")).
 
 
 11
 These are all specific, legitimate reasons supporting the ALJ's decision to reject Dr. Ronaghy's testimony. Each is supported by substantial evidence in the record. That being so, our inquiry into this issue is at an end. Magallanes, 881 F.2d at 751.
 
 II
 
 12
 Schulte argues that the ALJ improperly rejected his subjective complaints of pain. A claimant's subjective allegations of disabling pain must be supported by clinical or laboratory evidence of an underlying condition that could reasonably be expected to produce pain. 42 U.S.C. Sec. 423(d)(5)(A). The claimant need not produce medical evidence supporting the severity of the pain, only its likely existence. Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir.1991) (en banc). If the ALJ finds the claimant's allegations of excess pain are not credible, he must make specific findings supported by the record. Id. at 345-46.
 
 
 13
 The ALJ gave four reasons for rejecting Schulte's subjective complaints of pain, all of which are supported by evidence in the record. First, the ALJ found that the numerous physical and neurological examinations in the record revealed little evidence of significant abnormality of Schulte's spine, muscles, and joints. We already have discussed that this finding is supported by the VA records and Dr. Eriks's examination.
 
 
 14
 The second and third reasons both come from the VA records and Dr. Bishop's report. The ALJ noted that both sets of reports concluded that Schulte's complaints were psychosomatic and exaggerated; Schulte concedes that the VA records indicated his pain was somatic in nature. The ALJ also relied on the findings, contained in both sets of reports, that Schulte appeared comfortable with his lifestyle and exhibited no real desire to change it. Schulte argues that his participation in therapy at the VA Mental Health Clinic and his frequent visits to Dr. Ronaghy demonstrate an inclination to change his lifestyle. However, he does not (and cannot) dispute that the record contains medical opinions stating the opposite.
 
 
 15
 Finally, the ALJ observed that Schulte related to Dr. Bishop activities of daily living that were "markedly inconsistent" with Schulte's claim that he experienced severe or disabling pain. In particular, the ALJ noted that Schulte reported doing "limited household activities," "cooking, cleaning, washing dishes," and going "out in the afternoon to Carl's Jr., with his father." Schulte objects, pointing to his own testimony that his "cooking" consists of placing food prepared by his wife into the microwave oven. He does not, however, contest the accuracy of Dr. Bishop's report. Schulte argues that the ALJ interpreted Dr. Bishop's report as stating that he, Schulte, was "getting an aerobic workout or preparing for the olympic decathlon." But that was not the ALJ's finding. Rather, the ALJ pointed to specific record evidence that was inconsistent with Schulte's claim that the pain he experienced prior to January 1, 1989 was disabling. The ALJ did not err in rejecting Schulte's subjective complaints of pain.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3