133 F.3d 927
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Barnie HARDAWAY, Plaintiff-Appellant,
v.
Kenneth S. ARPEL, Acting Commissioner of Social Security,
Defendant-Appellee.
 No. 96-56594.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 2, 1997.**
Decided Jan. 15, 1998.
 
 Pasadena, California
 Before: FERGUSON, THOMPSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Barnie Hardaway appeals the district court's summary judgment affirmance of the Commissioner of Social Security's denial of his application for supplemental security income based on disability pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 405(g). Hardaway alleges that he is disabled due to back and leg pain, drug abuse, a heart ailment, and mental illness.
 
 
 3
 Following an administrative hearing, Administrative Law Judge ("ALJ") Lana Parke determined that Hardaway was not entitled to supplemental security income. ALJ Parke found that Hardaway had been performing substantial gainful activity from February 23, 1989 to July 3, 1992. ALJ Parke also found that, from July 3, 1992 to the date of her decision, August 27, 1993, Hardaway was not disabled because he possessed the residual functional capacity to perform light level work. We affirm. Because the parties are familiar with the factual and procedural background, we will not detail it here.
 
 
 4
 * The Social Security Act provides that an individual who is engaged in substantial gainful activity ("SGA") is not entitled to disability benefits, regardless of his physical or mental condition. See 42 U.S.C. § 423(e). While evidence of income alone is not dispositive of the performance of SGA, average monthly earnings over $300 before 1990 or over $500 beginning in 1990 create a presumption that a claimant is performing SGA. See 20 C.F.R. § 416.974(b)(2). Income from illegal activities is included in SGA. See Corrao v. Shalala, 20 F.3d 943, 947 (9th Cir.1994).
 
 
 5
 In her decision denying benefits to Hardaway, ALJ Parke concluded that Hardaway financed a heroin habit valued at approximately $200 per day prior to June 1990 and $50 per day from June 1990 to July 1992. ALJ Parke found that Hardaway earned money for his addiction by dealing drugs, collecting recyclables, and offering advice on fixing cars.[1] ALJ Parke further determined that Hardaway had not offered any evidence of business expenses. ALJ Parke concluded that Hardaway's activities raised the presumption that he had engaged in SGA until July 4, 1992, the date he entered a methadone program.
 
 
 6
 The presumption that a claimant engaged in SGA if he earned more than $300 a month before 1990 or over $500 a month beginning in 1990 is rebuttable by the claimant. See Corrao, 20 F.3d at 948. In Corrao, this court held that a claimant may rebut the presumption of SGA by showing that he did not perform work involving "significant mental or physical exertion." Id. The court stated that the factors to be considered in determining whether work involves "significant mental or physical exertion" include: (1) the responsibilities and skills required to perform the work; (2) the amount of time the individual spends working; (3) the quality of the individual's work; (4) special working conditions; and (5) for individuals who are self-employed, the value of their work to the business. See id.
 
 
 7
 In Corrao, the court concluded that consideration of these factors indicated that the plaintiff, who was also an alleged drug dealer, was not engaged in SGA. See id. at 948. The court based its conclusion on the following considerations: (1) Corrao spent less than an hour per day working; (2) Corrao did no planning for drug sales, but instead was contacted by purchasers when they wanted to buy drugs; (3) Corrao did not organize drug dealers; (4) Corrao did not use his own money for the transactions; and (5) Corrao did not "cut" the heroin. Id. The court concluded that, "[i]n sum, there is no indication of initiative, organization, responsibility, or physical or mental exertion by Corrao as is required for SGA." Id. at 949.
 
 
 8
 Hardaway contends that, under this court's decision in Corrao, his drug dealing did not constitute SGA. Because the Commissioner found that Hardaway earned over $300 before 1990 and over $500 beginning in 1990, Hardaway bears the burden of rebutting the presumption of SGA. See Corrao, 20 F.3d at 948-49. Therefore, in order to prevail under Corrao, Hardaway must show that his activities did not require "significant mental or physical exertion." Id. In contrast to the plaintiff in Corrao, Hardaway has failed to present any evidence to demonstrate that his drug-dealing activities did not involve significant mental or physical exertion. ALJ Parke attempted to develop the record concerning the nature and extent of Hardaway's drug-dealing activities, but Hardaway failed to cooperate. At the administrative hearing, Hardaway stated that he was unable to remember: (1) his testimony at a previous administrative hearing in June of 1990 that he bought heroin for others and kept part of it; (2) how much he was spending on heroin prior to that hearing; and (3) how he obtained the money to fund his habit.
 
 
 9
 ALJ Parke found that Hardaway's testimony that he did not remember anything about his drug-dealing activities was not credible. Hardaway's alleged memory lapses occurred only when ALJ Parke asked him a question. Hardaway never experienced such memory lapses when his own representative, Ms. Covales, asked him a question. When questioned by Ms. Covales, Hardaway was able to recall that he had been on general relief since 1989, that he had always paid for his rent and his food, that he never failed to pay drug dealers for his purchases, and that he had stopped using heroin on July 4, 1992. In addition, almost immediately after testifying that he did-not remember any of the statements he made at the 1990 administrative hearing, Hardaway denied stating at that hearing that he consistently used $200 of heroin per day. Thus, the record supports ALJ Parke's finding that Hardaway's statements that he did not remember anything about his drug-dealing activities were not credible.
 
 II
 
 10
 ALJ Parke concluded that Hardaway did not perform substantial gainful activity after July 4, 1992, the date on which Hardaway entered a methadone program and discontinued his use of heroin. Nonetheless, ALJ Parke found that Hardaway was not disabled from July 4, 1992 until the date of her decision. ALJ Parke concluded that, during that period, Hardaway retained the residual functional capacity to perform light level work activity and that there were a significant number of light jobs in the national economy that he could perform.
 
 
 11
 * Hardaway alleges that his back and legs hurt constantly. However, under this court's decision in Bunnell v. Sullivan, 947 F.2d 341 (9th Cir.1991), a claimant's subjective complaints of disabling pain are insufficient to support a claim of disability. Rather, the claimant must produce medical evidence of an underlying impairment causing the pain. See id. at 343. Hardaway has offered scant evidence of an underlying back impairment. In May of 1989, Hardaway was examined by Dr. Gary Feldman, who found that Hardaway's lumbar'motion was only mildly diminished. Moreover, x-rays of Hardaway's spine conducted by Dr. Feldman were negative. In September of 1989, when Hardaway was examined by Dr. Joel Hendler, Hardaway did not complain of back pain, and Dr. Hendler detected no back problems. Finally, when Dr. Alex Bloom examined Hardaway in April of 1993, he too reported that an x-ray of Hardaway's lumbar spine was negative. Therefore, ALJ Parke's conclusion that Hardaway failed to demonstrate that his alleged back pain was caused by an underlying impairment is supported by substantial evidence.
 
 B
 
 12
 Hardaway claims that ALJ Parke failed properly to evaluate his heroin addiction. However, ALJ Parke's finding that Hardaway retained the residual functional capacity to perform light level work activity relates only to the period from July 4, 1992 to the date of the hearing, during which Hardaway admits that he was not addicted to heroin.[2] Meanwhile, Hardaway's pre-1992 heroin addiction is irrelevant to ALJ Parke's finding that Hardaway was engaged in substantial gainful activity between 1988 and 1992. Once a claimant is found to be performing substantial gainful activity, he must be found not disabled "regardless of [his] medical condition." See 20 C.F.R. § 416.920(b).
 
 C
 
 13
 Hardaway next maintains that the Commissioner failed properly to evaluate his mental illness. During the hearing before ALJ Parke, Hardaway's representative maintained that Hardaway's "vagueness and confusion" were attributable to organic brain damage from drug use. When Hardaway was examined by Dr. Hendler in 1989, Dr. Hendler did note a "question of organic mental syndrome" because Hardaway appeared confused. However, when Dr. Myron Howland examined Hardaway in 1989, he concluded that, although Hardaway displayed some problems with motor coordination and memory, Hardaway had a full scale I.Q. of 90, and was capable of performing work requiring an average range of intelligence. Dr. Howland determined that Hardaway's drug abuse had "resulted in little if any intellectual impairment." Meanwhile, Dr. Wayman Blakely, who examined Hardaway in 1993, concluded that Hardaway's memory, concentration, and attention were all intact. Furthermore, a mental status examination conducted by Dr. Blakely showed that Hardaway was well oriented, and that his speech was coherent. Thus, ALJ Parke's finding that Hardaway does not suffer from organic brain damage is supported by substantial evidence.
 
 D
 
 14
 ALJ Parke found that Hardaway suffers from "severe heart problems." Nonetheless, ALJ Parke concluded that, despite his heart ailment, Hardaway retained the residual functional capacity to perform the full range of light work during the period from July 4, 1992 to the date of her decision and that there are a significant number of light level jobs existing in the national economy that Hardaway can perform.
 
 
 15
 None of the physicians who examined Hardaway between 1989 and 1993 concluded that Hardaway would suffer serious functional limitations as a result of his heart condition. In May of 1989, Dr. Feldman diagnosed Hardaway as suffering from left ventricular hypertrophy, but did not conclude that Hardaway would be hindered by any functional limitations. Dr. Hendler, who examined Hardaway in September of 1989, reported that Hardaway complained of heart palpitations and chest pain occurring once a week. However, Dr. Hendler concluded that Hardaway would be expected to experience only minimal limitations in function. Finally, in 1993, Dr. Bloom concluded that Hardaway retained the functional capacity to sit for 6 hours, stand and walk 4 hours in an 8-hour workday, lift and carry up to 10 pounds frequently and up to 25 pounds occasionally, and use his upper and lower extremities without restriction.
 
 
 16
 The treatment records from Harbor and Memorial Hospitals indicate that Hardaway's heart condition was compromised primarily by his own failure to comply with his prescribed treatment and by his heroin abuse. The discharge report from Harbor Hospital stated: "Prognosis: Good to poor if the patient continues to use drugs. The patient is aware of this prognosis." The discharge report from Memorial Hospital stated: "This is a very problematic patient in that he has an extensive, extensive thirty year history of heroin drug abuse and noncompliance. Final diagnosis: Congestive heart failure secondary to noncompliance and intravenous drug abuse." When a claimant's impairment is caused by noncompliance, that-impairment cannot serve as a basis for disability. See 20 C.F.R. § 416.930 (1996). Viewed in conjunction with the examining physicians' assessments of Hardaway's residual functional capacity, this evidence of Hardaway's noncompliance supports ALJ Parke's conclusion that he retains the ability to perform light level work activity.
 
 
 17
 Having determined that Hardaway retained the capacity to perform light level work activity, ALJ Parke properly applied the Medical-Vocational Guidelines ("Grids") to determine that there are jobs existing in significant numbers in the national economy that Hardaway can perform. Rule 202.13 of the Grids dictates that an individual of Hardaway's age, education, and vocational background who can perform light level work activity is not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.13. Consequently, ALJ Parke was correct to conclude that, despite his heart problems, Hardaway was not disabled during the period from July 4, 1992 to the date of her decision.
 
 III
 
 18
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 19
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); Circuit Rule 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 ALJ Parke rejected as not credible Hardaway's contention that his drug addiction was financed mainly by gifts from friends
 
 
 [2]
 Hardaway testified before ALJ Parke that he has not been addicted to heroin since he began methadone treatment on July 4, 1992