John McNEIL, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 98–6094–FR.

United States District Court, D. Oregon.

Dec. 23, 1998.

Kathryn Tassinari, Drew Johnson, Johnson, Cram, Harder & Wells, P.C., Eugene, OR, for Plaintiff.

Kristine Olson, United States Attorney, William W. Youngman, Assistant United States Attorney, Portland, OR, Richard E. Buckley, Special Assistant United States Attorney, Seattle, OR, for Defendant.

## OPINION

FRYE, District Judge.

The plaintiff, John McNeil, filed this action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. § 405(g), to review and set aside the final decision of the Commissioner of Social Security (the "Commissioner") who denied his application for social security disability insurance benefits.

## PROCEDURAL BACKGROUND

McNeil filed an application for Supplemental Security Income (SSI) and disability insurance on April 12, 1994, alleging disability due to Crohn's disease, amputated fingers, and forgetfulness. The application was denied on June 19, 1994. McNeil's request for reconsideration, filed on July 26, 1994, was denied on October 31, 1994. On December 21, 1994, McNeil filed a request for a hearing, which was held before an Administrative Law Judge ("ALJ") on March 22, 1996. The ALJ denied McNeil's claim on October 11, 1996. McNeil requested a review of the hearing decision on October 17, 1996. On March 5, 1998, the Appeals Council declined to review the ALJ's decision. McNeil then filed this action for review.

## FACTS

McNeil was 51 years old at the time of the hearing. He is 6'2." His weight is stable at 225 pounds. He has an eighth grade formal education, and he has completed some of the ninth grade. Relevant work experience includes working as a machinist and seven months [1] as a gas station attendant, working four to five hours a day, a job which he left voluntarily. McNeil has not engaged in any substantial gainful activity since March 21, 1994. McNeil alleges disability because of Crohn's disease, which he says causes him to have frequent bowel movements; an amputation of the tip of his right thumb, with severed tendons; and an amputation of the tip of his right index finger.

Although not seeking disability on theses grounds, McNeil also complains of knee pain and hip pain and, as the result of two auto accidents, neck and low back pain. McNeil further complains of "anger problems." There is also a discussion of treatment for Bell's palsy in the medical records. Finally, McNeil is a chronic carrier of Hepatitis C.

### 1. Testimony

McNeil testified that he has suffered from Crohn's disease since 1976, and it continues to worsen. The first medical records discussing Crohn's disease are from 1982.

1. McNeil reported to Dr. Neil Falk, M.D. that he     had never held a job for more than *six* months.

When working as a gas station attendant, McNeil had "accidents" two or three times a month; that is to say, he would not be able to control his bowel movements. He would then have to leave work to go home and change clothing. McNeil stated that he hid his illness from his supervisor, so no one could corroborate his testimony. McNeil's counsel initially declined the ALJ's offer to accept corroboration from machinist supervisors or the gas station employer, but then decided that he would try to obtain such evidence. There was no corroboration in the record. McNeil also testified that he could not wear adult diapers because of the acidity of his stool.

McNeil testified that he was fired from his job as a machinist in the State of California for spending too much time in the bathroom. During this period of time, McNeil had a drug problem.

McNeil's normal weight is 185 pounds, but he believes that the steroids he took in 1992 contributed to his weight gain. McNeil was on the steroids for two to three months, 20 milligrams a day.

McNeil's partially amputated thumb and finger did not interfere with his gas station work, which included using a cash register.

## 2. *Medical Evidence*

McNeil has tried Prednisone, Dipentum, and Amodal (phonetic) to control his disease. Although surgery has been an option, McNeil has decided not to pursue that course of treatment.

Disability Determination Service doctor, Martin Kehrli, M.D., concluded that McNeil should avoid machinery and heights, due to an expressed fear of heights.

Consultative doctor, William Groh, M.D., and treating doctor, Terrance Hill, M.D., found that McNeil had overstated the symptomology of Crohn's disease at various times. Dr. Groh stated that Crohn's disease may limit McNeil's occupational endeavors if his employers do not allow him unlimited bathroom privileges and potential time off from work for flare-ups of the disease.

On July 21, 1982, McNeil reported having up to 14 stools a day.

On July 21, 1987, McNeil requested to have his stool sampled for parasites.

On April 16, 1991, McNeil reported having 14 to 16 non-bloody stools a day. He also reported that he had seen a gastroenterologist, who advised him to consider surgery. As a result, he never went to another gastroenterologist.

On May 14, 1991, McNeil reported having 12 to 13 small volume, watery, mucousy stools per day.

On May 29, 1991, Timothy W. Burke, D.O., reported that McNeil was unable to work for the next sixty days due to his Crohn's disease.

On July 10, 1991, Dr. Burke came to the medical impression that McNeil suffered from "functional gastric emptying disorder, possibly secondary to narcotic abuse vs. partial obstruction secondary to intestinal Crohn's disease." While in prison, McNeil would swallow balloons filled with drugs and regurgitate them at will, up to several days later.

On July 30, 1991, McNeil reported having 4 to 5 loose, non-bloody stools per day.

On September 9, 1991, McNeil reported having 7 to 8 loose, non-bloody stools per day.

In 1992, treating doctor, David Cutsforth, Jr., M.D. stated that the bowel movements were occurring only twice daily.

On January 30, 1992, McNeil reported that his bowel movements had changed from bloody, occurring 7 to 9 times a day, to showing no evidence of blood and occurring twice a day.

On February 25, 1992, McNeil reported that he averaged 7 bowel movements per day in a 24–hour period of time, with no evidence of blood.

On October 8, 1993, McNeil reported his Crohn's disease as stable.

On October 26, 1993, McNeil reported to be "doing very well" with his Crohn's disease.

On January 9, 1994, McNeil reported having 10 to 12 bowel movements per day, with blood from his hemorrhoids. Surgery as an

option was discussed with gastroenterologist, Surinder M. Vasdev, M.D.

On March 28, 1994, McNeil reported that he had 12 to 14 stools per day.

On April 24, 1994, McNeil reported that he had to go to the bathroom 12 to 14 times a day.

On June 4, 1994, McNeil reported that he had up to 14 bowel movements a day, with normally 6 to 8 bowel movements a day.

On August 27, 1994, psychiatrist, Neil Falk, M.D., found that McNeil suffered from "some mild depression and cognitive impairment, but these likely would not impair him from working productively in gainful employment." TR 179.

On October 28, 1994, John M. Pesandi, M.D. [name not legible from the records] stated that McNeil "appears to have overstated his baseline need for bathroom privileges and the frequency of his flareups." TR 108.

On June 5, 1995, McNeil reported bowel movements up to 15 times a day.

In a letter to an ALJ, dated April 1, 1996, Robert D. Wimmer, M.D. stated that McNeil had not reported any complaints of Crohn's disease to him in the past year of treatment, until March 27, 1996 when he complained of more frequent bowel movements. Upon referral to a gastroenterologist, blood tests did not show any evidence of a high degree of inflammation in the intestinal tract, which would be consistent with excessive bowel movements. Dr. Wimmer further stated: "In my opinion, his findings are inconsistent with his level of complaint." TR 246. Dr. Wimmer also reported: "As I stated in my previous opinion written to Mr. McNeil's lawyer, I'm unaware of any reason why Mr. McNeil couldn't be employed at a sedentary occupation" *Id.* The previous letter was regarding a motor vehicle accident on November 7, 1995.

Dr. Wimmer then wrote another letter to McNeil's attorney, stating that "[a]ssuming [McNeil's] statements regarding his frequency and duration of bowel movements are accurate, then it would interfere with his work performance. The inflammatory disease would not, however, specifically interfere with his physical abilities to perform sedentary work." TR 259.

On April 11, 1996, McNeil reported having at least 10 stools per day, including two to three times at night.

On July 18, 1996, gastroenterologist, Albert E. Ryckman, M.D., discussed surgery with McNeil.

### 3. *Vocational Evidence*

Vocational expert, Jennifer Coiner, testified that someone with Crohn's disease could not perform McNeil's past relevant work, but could perform the light, unskilled work of a hand packager with 210,000 jobs available nationally, film lab technician with 110,000 jobs available nationally, and a mail clerk in a large business sorting and distributing mail with 175,000 jobs available nationally. When considering the need for "unlimited" use of the bathroom, Coiner stated that as long as it did not interfere with one's work or required the individual to stay in the bathroom for two to three hours of an eight-hour workday, it would be acceptable to an employer.

### 4. *ALJ Decision*

The ALJ discredited McNeil's testimony regarding his symptoms. The ALJ may only reject subjective symptom testimony for clear and convincing reasons. *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir.1996).

McNeil contends that the ALJ's findings are clear and convincing because (1) McNeil stated that he reads, walks, babysits his three-year-old daughter, and makes and sells jewelry; (2) McNeil has inconsistencies in reporting his educational level; (3) McNeil's involvement in over 200 armed robberies to support a drug habit and the manslaughter conviction for bludgeoning a man are tied to credibility and honesty; (4) McNeil sought no treatment for Crohn's disease from July of 1991 to January of 1994, including never lodging complaints with his treating physician until March 27, 1996; and (5) McNeil never demonstrated any discomfort with his Crohn's disease while in the ALJ's waiting area for office visits or during the fifty-minute hearing.

McNeil contends that the ALJ's reasons for rejecting his claims are not clear and convincing because (1) McNeil's home activities are limited, and the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits; (2) any inconsistencies with statements regarding education are readily explainable; (3) McNeil has been clean from heroin for 23 years,[2] so his prior criminal history should not be used to reject his symptom testimony; (4) the extended periods without treatment exist because McNeil did not think that there was anything doctors could do to help him; and (5) the fact the McNeil did not need to use the restroom during the ALJ's hearing is not inconsistent with McNeil's description of his limitations.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir.1986). To meet this burden, claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140, 107 S.Ct. 2287; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41, 107 S.Ct. 2287; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 141, 107 S.Ct. 2287; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform his past relevant work, the claimant is not disabled. If the claimant cannot perform his past relevant work, the burden of proof shifts to the Secretary.

In step five, the Commissioner must establish that the claimant can perform work other than his past relevant work. *Yuckert*, 482 U.S. at 141–42, 107 S.Ct. 2287; *see* 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

*1. McNeil's Symptom Testimony*

Once the claimant produces objective medical evidence of an underlying impairment, the ALJ may not reject subjective

**2.** The record indicates that McNeil had used illegal substances 18 months prior to an examination on August 27, 1994.

complaints based *solely* on a lack of corroborative objective medical evidence regarding the alleged severity of the pain or degree of impairment. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.1991) (en banc) (emphasis added). When concluding that subjective complaints are not credible, the ALJ must make specific findings supporting this conclusion. *Id.* Such findings must be properly supported by the record, and must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds, and did not arbitrarily discredit a claimant's testimony regarding pain. *Id.* at 345–46. *See also* 20 C.F.R. § 404.1529 (1993). The ALJ must make findings on the record and must support those findings by pointing to substantial evidence in the record. *Id.*

It is undisputed that an ALJ is entitled to make a credibility assessment of a claimant's testimony. Nevertheless, once the claimant establishes an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject claimant's testimony, providing there is no evidence of malingering. *Smolen*, 80 F.3d at 1281–82.

"To determine whether the claimant's testimony regarding the severity of [his] symptoms is credible, the ALJ may consider ... (1) ordinary techniques of credibility evaluation ...; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1284. Also the ALJ must consider the factors set forth in SSR 88–13, including the "claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities." *Id.*

The court finds that the ALJ gave specific reasons for partially discrediting McNeil's testimony. The ALJ determined that the medical evidence established that McNeil has Crohn's ileitis and partial amputation of the thumb and index finger of the dominant right hand, which singly, or in combination, does not meet the criteria for any listed impairment. Of more importance for this court's review, the ALJ found that the "claimant's statements concerning his impairment and its impact on his ability to work are not entirely credible." TR 14. Although the ALJ found that McNeil was unable to perform his past relevant work as a machinist or gas station attendant because he could not wait for long periods of time for the cars to arrive, he found that "[c]onsidering the claimant's age, educational background, and residual functional capacity, he is able to make a successful vocational adjustment to unskilled work which exists in significant numbers in the national economy." TR 19.

When determining the credibility of McNeil, the ALJ found that McNeil's stable weight and prolonged periods of time devoid of any treatment or complaints pertaining to his Crohn's disease were indicators that McNeil had exaggerated his symptoms. The ALJ was persuaded by the physicians who opined that McNeil was able to obtain employment, provided he had readily available access to a bathroom at all times. The ALJ also found it unlikely that McNeil was suffering from such a high number of bowel movements, yet failed to notify his primary care physician of the matter. It is proper to believe that a person who complains of up to 20 bowel movements a day would suffer from weight loss, which McNeil did not. It is also proper to rely on the opinions put forth by experienced physicians that a person suffering from Crohn's disease is able to be employed, provided they have access to bathroom facilities.

With regard to the amputation of McNeil's fingers, the ALJ found that McNeil's ability to function in the workplace was not undermined because McNeil testified that he could perform his prior work as a gas station attendant, which included using the cash register. McNeil's own testimony was substantial evidence that his amputations did not render him disabled.

The ALJ found that the evidence was inconsistent as to McNeil's education. McNeil denied that he had told two different examiners that he completed his GED while in prison. Although McNeil states that any

inconsistencies can be explained, there is no explanation for the fact that two examiners have stated that McNeil completed a GED in prison when McNeil denies reporting this information. It is unlikely that two examiners would have made the same mistake.

Furthermore, although McNeil's active involvement with drugs and criminal activity occurred in the distant past, the ALJ found that "such history cannot be completely divorced from the issue of credibility and honesty." TR 16. While McNeil contends that he is being punished for his past, it does not appear that the ALJ placed undue emphasis on this issue.

Finally, the ALJ found that although the record indicates that McNeil suffered from Crohn's disease and amputation, the record does not support McNeil's complaints of memory loss or anti-social/depressive behavior hindering his employment opportunities. Indeed, the psychiatric evaluation provided in the record states that McNeil has good concentration and no significant memory impairment.

Although the ALJ asked for corroborating evidence, it does not appear that he discredited McNeil's statements regarding his symptoms and their impact based solely on the lack of corroboration, as that it not allowed. *See Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (en banc).

The court finds that the ALJ considered all of the relevant factors and did not arbitrarily discount McNeil's testimony regarding his subjective complaints.

## CONCLUSION

The Commissioner's findings on the disabilities of McNeil, considering the record as a whole, are supported by substantial evidence. The decision of the Commissioner is affirmed.