**Connie RANCHEZ, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant.**

**Civil No. 98–6154–FR.**

United States District Court, D. Oregon.

Jan. 20, 1999.

David W. Hittle, Burt, Swanson, Lathen, Alexander & McCann, Salem, OR, for plaintiff.

. Kristine Olson, United States Attorney, William W. Youngman, Assistant United States Attorney, Portland, OR, Renee C. McFarland, Special Assistant United States Attorney, Seattle, WA, for defendant.

## OPINION

FRYE, District Judge.

The plaintiff, Connie Ranchez, filed this action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. § 405(g), to review and set aside the final decision of the Commissioner of Social Security (the "Commissioner") who denied her application for social security disability insurance benefits.

## PROCEDURAL BACKGROUND

Plaintiff Ranchez filed an application for Supplemental Security Income and disability insurance benefits with the Social Security Administration on August 18, 1994, alleging disability due to low back pain. The application was denied. Her request for reconsideration was also denied. A hearing before an administrative law judge ("ALJ") was held on September 6, 1996. The ALJ denied the claim of Ranchez on October 15, 1996. Ranchez requested a review by the Appeals Council, which affirmed the ALJ's decision on April 2, 1998. Ranchez then filed this action for judicial review on May 21, 1998.

## BACKGROUND FACTS

Plaintiff Ranchez was 49 years old at the time of the administrative hearing. She is five feet tall and weighs 156 pounds. She is a high school graduate, with five years of junior college and no degree. She has worked as a security worker and a gate guard. Ranchez has not engaged in any substantial gainful employment since May 27, 1993. She claims that she is disabled because of chronic back strain, spondylolisthesis at L4–5, and degenerative disc disease.

### 1. *Testimony of Plaintiff Ranchez*

Plaintiff Ranchez testified that on September 17, 1992 she received a tetanus shot after she cut her arm on a gate while at work. The tetanus shot created a reaction that has caused her to have excruciating pain throughout her body, which has never subsided. She has severe neck problems that cause spasms in her fingers and low back pain that travels down her legs. Her mother helps her change her clothes and fixes her hair. Her sleeping patterns are disturbed because she awakens every two to three hours each night. She does not take medication to sleep because she fears she will become addicted. She takes one Vicodin pill a day for her pain. However, on May 27, 1993, her treating physician, Dr. George Smith, reported that Ranchez was taking several Vicodin pills a day. TR 133. Ranchez estimates that she stays in bed flat on her back for half of an eight-

hour day. She uses a heating pad and a neck collar and listens to the radio. The Bell's palsy on the right side of her face does not permit her to read because she lacks tear ducts. She does not fix any meals, help with cleaning the house, or drive, although she has a valid Oregon driver's license and is the owner of a vehicle. Ranchez referred to the pain which she was then suffering during the administrative hearing.

Prior to moving to the State of Oregon in 1994, Ranchez lived by herself in San Francisco, California. At that time, she prepared all of her meals and cleaned her own house. The pain from which she suffers has increased since she left the State of California.

## 2. Medical Evidence[1]

When Dr. Robert Palmer examined Ranchez in April of 1993, he found no evidence to support her allegations of disability; instead, he found that she was fully capable of performing her usual occupation. He stated that her injury was minor and innocuous. Dr. Palmer also believed that "there are fundamental psychological problems here related to stress, tenseness and nervousness." TR 155.

In May of 1993, Dr. Smith noted that it was unclear whether a low back injury had even occurred, and the psychological issues of managing the stress involved at her job and in her life related to her complaints of pain.

When Dr. James Reynolds examined Ranchez in June of 1993, he found that her motor and sensory perceptions were intact and her reflexes symmetrical. He noted that she could raise her leg to 90 degrees in a sitting position. After reviewing her MRIs, Dr. Reynolds concluded that she suffered from degenerative spondylolisthesis with a 2–3 mm slip at L4–5. Dr. Reynolds noted that Ranchez was scheduled for

the surgical removal of a tumor in her pelvis.

On June 7, 1993, Joseph Galletta, a physical therapist, stated that "[t]he patient was not significantly inhibited by her symptoms during the initial evaluation. Poor movement patterns may be a major reason for the chronic nature of her symptoms." TR 120. On July 1, 1993, Galletta concluded that Ranchez "was not so limited by her symptoms as by the deconditioned state, frequently stating that she felt drained during the session." TR 118. That same month, Dr. Damon Sacco, a radiologist, examined Ranchez and concluded that her condition was consistent with mild disc degeneration and minimal degenerative anterior spondylolisthesis of L4–5.

On June 28, 1993, Dr. Smith diagnosed Ranchez with grade I spondylolisthesis at L4–5.

On July 14, 1993, Dr. Smith diagnosed Ranchez with disc protrusion, spondylolisthesis and degenerative findings at L4–5. The drug, Paxyl, was prescribed for her stress.

On August 16, 1993, Dr. Smith diagnosed Ranchez with disc protrusion, traumatic disc injury of the lumbar spine and recommended a trial of the drug, Nortripyline, for chronic pain, sleep disturbances, and depression.

On November 24, 1993, Trish Lane, a vocational rehabilitation counselor, reported that Ranchez would not be receiving rehabilitation from the City and County of San Francisco because she was experiencing significant pain and discomfort.

On September 28, 1994, Dr. Smith stated that Ranchez's back and lower extremity pain was consistent with her MRI scan, which showed a grade I spondylolisthesis, degenerative at L4–5, and moderate degeneration at the L4–5 disc space. Dr. Smith also reported that Ranchez took pain pills occasionally.

1. Although Ranchez testified that Dr. Bruce Edwards was her regular doctor while she

lived in the State of California, there are no medical records from this physician. TR 37.

When Dr. Jerome Stroot examined Ranchez in October of 1994, he believed her to be capable of full-time employment, although not motivated to work, stating: "It is my impression that her complaints are out of proportion to the positive objective physical findings." TR 143. He noted some muscle spasm, but stated that it was not "definitely detectable." TR 142. He limited Ranchez from repetitive bending, lifting from the floor level, standing for more than one hour at a time, or sitting for more than one hour at a time. He found her capable of lifting five to ten pounds from waist level and carrying these pounds 20 feet.

That same month, Dr. Agaton Gualberto reported mild reversal of the normal lordosis in the mid cervical spine, mild encroachment of the neural foramina at C6–7 and C7–T1 levels bilaterally, and no evidence of acute fracture or subluxation. Dr. Luke Caeung, a radiologist, found the worst spondylosis at C3–4.

When Dr. R.M. O'Brien examined Ranchez in November of 1994, he diagnosed chronic back strain; however, he concluded that Ranchez could lift 50 pounds occasionally and 25 pounds frequently, and that she could stand, sit or walk for at least six hours in an eight-hour day, as well as having the ability to push and pull without restrictions. That same month, Dr. Lincoln Lum found nothing medically wrong with Ranchez.

When Dr. Charles Spray examined Ranchez in March of 1995, he diagnosed ankylosing spondylitis and other inflammatory spondylopathies. He found that Ranchez could lift 20 pounds occasionally, and 10 pounds frequently, and that she could sit, stand or walk at least six hours in an eight-hour day. Dr. Spray concluded that she was limited in her ability to push and pull with her left arm. Dr. Spray also noted that Ranchez could flex and extend her neck normally and bend with discomfort. Dr. Spray noted a tremor, a weak left grip, and muscle atrophy.

In April of 1995, Dr. Brian Salmen diagnosed moderate bilateral L4–5 facet degenerative changes, with slight degenerative L4–5 spondylolisthesis. He found moderate posterior spurring at C3–4, suggesting mild to moderate foraminal stenosis.

In a letter dated September 4, 1996, Dr. Smith stated that:

This patient suffers from chronic back pain due to conditions of the spine that include: spondylolisthesis at the L4–5 level; degenerative disc bulging at the L5–S1 level; facet arthritis of the spine. This is all documented in the MRI scan done on April 5, 1995.

This patient's prognosis is poor for full or even partial recovery. The objective pain level that can be substantiated is that her reduced function and reduced motion of her spine of examination [sic]. This patient's current restrictions are significant. She cannot sit or stand for any period greater than one hour. She cannot carry, bend, stoop or work overhead. Her walking tolerance is less than 30 minutes at one time due to pain.

This patient has coexistent symptoms with her chronic pain that are due to and made worse by its presence that include: sleep disturbances, anxiety and irritability, and difficulty concentrating.

This patient would have significant difficulty in performing an 8 hour work day with several periods of rest.

TR 183.

### 3. Vocational Evidence

Russell Carter testified as a vocational expert at the request of the Commissioner. Carter testified that the past relevant work experience of Ranchez, security worker and gate guard, was light for exertional level and semi-skilled for skill level. Carter disagreed with the testimony of Ranchez, stating that the position of gate guard supported a sit/stand option, and one could rarely expect a steady stream of cars as Ranchez had described.

#### 4. The ALJ's Decision

The ALJ determined that Ranchez "has a severe impairment in the form of low back pain, although this pain is without any compelling objective findings...." TR 15. Although he determined that her impairment is severe, the ALJ found that Ranchez could perform a job requiring a "limited to a light level of physical exertion and ... that she is able to return to her past job as a gate tender as that job is normally performed in the national economy." TR 16.

## CONTENTIONS OF THE PARTIES

### A. Treating Physician's Testimony

The ALJ rejected Dr. Smith's opinion because Dr. Smith did not give reasons for the restrictions he imposed on Ranchez, and because Dr. Smith's report is dated two years after he last saw Ranchez.

Ranchez contends that the ALJ erred by rejecting the opinion of her treating physician, Dr. Smith, and instead basing his decision on the opinions of the two examining physicians. Ranchez contends that the ALJ's reasons for rejecting Dr. Smith's opinion are not supported by the record because Dr. Smith stated his reasons for restricting Ranchez by discussing the level of the degenerative changes shown in the MRI and the reduced function and motion of Ranchez's spine in his opinion of September 4, 1996. Ranchez also contends that Dr. Smith examined her on March 29, 1996 (TR 169).

The Commissioner contends that the ALJ's findings are clear and convincing because Dr. Smith found that Ranchez was a candidate for vocational rehabilitation, which is inconsistent with a finding that she is disabled.

### B. Medical Test Results

The ALJ makes no specific reference to any MRI reports in his opinion. Ranchez contends that the ALJ failed to properly consider the results of the various MRI's which support plaintiff's complaints, while defendant contends that the ALJ properly evaluated the medical evidence.

### C. Plaintiff's Testimony

The ALJ found that the testimony of Ranchez was not convincing. The ALJ stated that Ranchez's description of her work capabilities is totally different from the description given by the physicians who examined her and found her capable of work activity, and that "her credibility is eroded by her contentions of helplessness during the entire time period in which she alleged disability. However, she was able to live by herself from her alleged onset date until she moved to Oregon in October 1994." TR 19.

Ranchez contends that the ALJ erred in rejecting her testimony regarding the level of her pain and the extent of her limitations because her testimony is consistent with the testimony of Dr. Smith, although there are inconsistencies between her testimony and the two physicians who saw Ranchez on one occasion each, and on a date that was two years prior to the hearing. Ranchez also contends that these two physicians did not have her MRIs for review.

The Commissioner contends that the ALJ properly took the subjective complaints of Ranchez into account, but he also properly considered her lack of motivation and interest in returning to work.

### D. Vocational Expert

The ALJ posed a hypothetical question to the vocational expert regarding a person who could perform semi-skilled light work.

Ranchez contends that the ALJ did not pose a hypothetical question to the vocational expert which included her limitations. Those limitations included Dr. Smith's opinion that Ranchez could not sit or stand for more than an hour or walk for more than 30 minutes, or perform any activity involving carrying, bending, stoop-

ing, or working overhead. Dr. Smith also was of the opinion that Ranchez could not work eight hours without several periods of rest. Ranchez had testified that she must spend much of her day either laying down or reclining to reduce the level of her chronic pain.

The Commissioner contends that based on the opinion of Dr. Stroot, who indicated that Ranchez could perform the job as described, the ALJ posed a proper hypothetical question to the vocational expert.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler,* 807 F.2d 771, 771 (9th Cir.1986).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir.1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Yuckert,* 482 U.S. at 140, 107 S.Ct. 2287; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert,* 482 U.S. at 140–41, 107 S.Ct. 2287; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.; see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden of proof shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform work other than past relevant work. *Yuckert,* 482 U.S. at 141–42, 107 S.Ct. 2287; *see* 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

1. *Treating Physician's Testimony*

■ An ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for rejecting the opinion of a treating physician. *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.

1995). Dr. Smith has treated Ranchez a few times since May 27, 1993. Ranchez contends that Dr. Smith is a specialist in internal medicine, rather than an "internist" as the ALJ stated in his opinion. TR 16.

■ The ALJ stated that he found Dr. Smith's opinion unpersuasive because he had not seen Ranchez for two years. TR 17. The record supports the contention of Ranchez that Dr. Smith had examined Ranchez on March 29, 1996. TR 169. This examination was less than six months before Dr. Smith wrote his report on September 4, 1996. If the timing of Dr. Smith's final written opinion and his status as an "internist" versus his status as a physician in internal medicine were the sole factors that aided the ALJ in his determination of Dr. Smith's credibility, the ALJ's decision may well need to be revisited, but there is other substantial evidence in the record to support the ALJ's decision to give greater weight to the other specialists who examined Ranchez.

Dr. Smith stated that Ranchez could participate in vocational rehabilitation. He also stated that Ranchez was "temporarily totally disabled." TR 129. The ALJ properly considered this contradiction in discounting the opinion of Dr. Smith. The Ninth Circuit has upheld the decision of an ALJ to reject a doctor's opinion when other evidence—such as laboratory test results, contrary reports from examining physicians, claimant's testimony, and medical reports—besides another doctor's opinion, supports the rejection. *Lester v. Chater,* 81 F.3d 821, 831 (9th Cir.1995). The ALJ found that "[t]he most convincing medical opinions came from the specialists who have examined and evaluated the claimant." TR 17. Because the ALJ gave sufficient and legitimate reasons for favoring the opinions of other examining physicians over the opinion of Dr. Smith, the ALJ was allowed to discredit Dr. Smith's opinion.

### 2. *Medical Test Results*

There is no indication that the ALJ failed to consider the medical records provided by Ranchez, including the MRI results. There are various diagnoses for Ranchez, many contradicting each other. There is no evidence which supports the conclusion of Ranchez that the ALJ failed to properly consider the MRI evidence.

### 3. *The Plaintiff's Testimony*

■ The ALJ is responsible for credibility determinations. *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984). Once the claimant produces objective medical evidence of an underlying impairment, the ALJ may not reject subjective complaints based solely on a lack of corroborative objective medical evidence regarding the alleged severity of the pain or degree of impairment. *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (en banc). When concluding that subjective complaints are not credible, the ALJ must make specific findings supporting this conclusion. *Id.* Such findings must be properly supported by the record, and must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain. *Id.* at 345–46. *See also* 20 C.F.R. § 404.1529 (1998). The ALJ must make findings on the record and must support those findings by pointing to substantial evidence in the record. *Id.*

It is undisputed that an ALJ is entitled to make a credibility assessment of a claimant's testimony. Nevertheless, once the claimant establishes an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject claimant's testimony, providing there is no evidence of malingering. *Smolen v.. Chater,* 80 F.3d 1273, 1281–82 (9th Cir.1996).

"To determine whether the claimant's testimony regarding the severity of her symptoms is credible the ALJ may consider ... (1) ordinary techniques of credibility evaluation ...; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1284. Also the ALJ must consider the factors set forth in SSR 88–13, including the "claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities." *Id.*

■ All of the following factors support the ALJ's questioning of the credibility of Ranchez: the medical records are replete with medical opinions expressing concern over the lack of motivation shown by Ranchez to return to work; Ranchez was able to care for herself in the State of California for more than a year and a half after the alleged onset date; and many physicians have found no objective manifestations of limitation to support the disability claimed by Ranchez. The court finds that the ALJ considered all of the relevant factors and did not arbitrarily discount the testimony of Ranchez regarding her subjective complaints.

*4. Vocational Expert*

■ "Although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record." *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995). The vocational expert testified that as a gate guard job is typically performed, there is an opportunity for the gate guard to sit as well as to stand because there is not a steady stream of people. There is substantial evidence in the record that Ranchez is able to perform the duties of a gate guard: Dr. Palmer found that Ranchez was capable of performing in full her usual occupation in April of 1993; Dr. Smith initially stated that it was unclear whether a low back injury even existed in June of 1993; physical therapist Galletta found that Ranchez was not significantly inhibited by her symptoms in June of 1993; Dr. Stroot found Ranchez capable of full-time employment in October of 1994; Dr. O'Brien diagnosed chronic back strain in November of 1994, but found that Ranchez could sit or stand for at least six hours in an eight-hour day; and Dr. Spray found that Ranchez could sit or stand for at least six hours in an eight-hour day in March of 1995. Although the ALJ did not include the restrictions Dr. Smith imposed on Ranchez, the hypothetical question was supported by substantial evidence in the record.

## CONCLUSION

The Commissioner's findings on the disabilities of Ranchez, considering the record as a whole, are supported by substantial evidence. This decision is affirmed.