Cynthia A. KERSHNER,
Plaintiff–Appellant,

v.

Larry G. MASSANARI, Commissioner,
Social Security Administration,*
Defendant–Appellee.

No. 99–16322.
D.C. No. CV–98–02348–FMS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 16, 2001.

Decided June 11, 2001.

* Larry G. Massanari is substituted for Kenneth S. Apfel, Commissioner of the Social Security Administration, pursuant to Fed. R.App. P. 43(c)(2).

Before B. FLETCHER, FERNANDEZ, and PAEZ, Circuit Judges.

### MEMORANDUM **

On December 2, 1990, 33–year–old Cynthia Kershner ("Kershner" or "claimant") injured herself while trying to move a clothes dryer. Since then, she has sought treatment for severe and debilitating pain in her lower back and leg that persists twenty-four hours a day. She testified that she cannot bend or stoop or lift ob-

jects. Her mobility is limited, and she states she cannot remain in the same position, whether sitting, standing, or walking, for more than twenty minutes at a time.

Kershner applied for a period of disability, disability insurance benefits, and supplemental security income, which the Social Security Administration denied. She requested a hearing before an administrative law judge ("ALJ"), who found that Kershner had produced insufficient evidence of a determinable physical impairment, despite the fact that Kershner had submitted physicians' records from dozens of office and hospital visits. The ALJ further found Kershner not credible.

The Appeals Council of the Social Security Administration denied Kershner's request for review, and the district court granted summary judgment affirming the Commissioner of Social Security Administration's ("Commissioner") denial.

### I.

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir.2000). We may set aside the decision of the Commissioner if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.1999). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir.2000).

### II.

A "disability" is "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continu-

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

ous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Symptom evidence can be shown to affect an individual's ability to do basic work activities if the "individual first establishes by objective medical evidence ... that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96–3p;[1] *see also Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). The claimant need not produce evidence of the pain itself other than her subjective testimony, nor objective medical evidence of a causal relationship between the impairment and the type of symptom. *Id.; Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.1995). Rather, the claimant need show only that it is reasonable to infer that the type of symptom could result from the impairment. *Smolen*, 80 F.3d at 1282.

■ The ALJ erred here when he purported to assess whether Kershner's impairment could lead to her "level" rather than to her "kind" of pain. The ALJ held, "the medical file reveals, although the claimant underwent many diagnostic tests and examinations, that none of these tests identified any impairment *which was severe enough to reasonably be expected to produce the symptoms of extreme pain* that the claimant alleges." This was reversible error.

The record shows that throughout the four to five year period in question, Kershner's doctors assessed and diagnosed her symptoms on the basis of her statements, their clinical observations, laboratory tests, and other scientific methods. These physicians reported, for example, that Kershner's injury was a lumbar sprain, that she had degenerative disc/joint disease, myofascial pain, myositis, and lumbar discopathy. In addition, tests revealed minor degenerative disease, minor arthropathy, significant degenerative arthropathy, slight lateral disc bulging, slight neural foraminal narrowing, and irritability in the L5 root. Rather than determining whether any of these impairments could lead to the type of pain Kershner suffered (that is, back and leg pain), the ALJ asked whether what he deemed to be "mild, slight, and minimal" diagnoses could lead to *severe* pain. In so doing, the ALJ committed reversible error. *See Smolen*, 80 F.3d at 1281–82; *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986).

### III.

The ALJ further erred by failing to accord the opinion of Kershner's treating physician, Dr. Pramuk, controlling weight and in applying the wrong legal standard when assessing Kershner's credibility.

### A.

■ A treating physician's medical opinion as to the nature and severity of an individual's impairment *must* be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record. *SSR* 96–2p. There is no doubt that Dr. Pramuk was Kershner's treating physician. He treated Kershner on the day she first injured herself, and he evaluated Kershner more than twenty times from 1990 to 1995. The record here shows that

---

1. The Secretary issues Social Security Rulings ("SSR") to clarify the Secretary's regulations and policy. *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir.1991) (en banc). Although SSRs do not have the force of law, they represent the Secretary's interpretation of SSA regulations, and we defer to them accordingly. *Id.* These rulings are especially relevant because they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35. We will not, however, uphold them if they are inconsistent with the statute and regulations. *Bunnell*, 947 F.2d at 346 n. 3.

Dr. Pramuk's opinion was well-supported and not inconsistent with other substantial evidence, contrary to the ALJ's conclusion.

Notably, with one exception, Dr. Pramuk's diagnoses, including "Myositis/Muscle spasm," "chronic lumbar sprain," "lumbar strain, myofascial pain, mositis," "lumbar discopathy," and "degenerative disc/joint disease," were not contradicted by the examinations performed by other doctors. Each of these physicians noted in their reports or diagnosed Kershner's complaints of chronic back pain; none of them found that Kershner had no impairments. As for Dr. Pramuk's notation that Kershner suffered from fibromyalgia, he eliminated the diagnosis in subsequent reports when it appeared that his assessment was not confirmed. In any event, Kershner did not apply for benefits on the basis of fibromyalgia, nor does she contend now that this impairment should have been considered. In short, the record does not support the ALJ's failure to give Dr. Pramuk's opinions controlling weight.

The ALJ opined that many of Dr. Pramuk's opinions were not well-supported because they were not based on clinical techniques and diagnoses but were instead the parroted dictation of Kershner's subjective pain complaints. It is true that doctors write down the symptoms that their patients report experiencing; all doctors do this. But, as evident from the list above, many of Dr. Pramuk's other notes reflect conclusions from "clinical and laboratory diagnostic techniques that ... are in accordance with the medical standards that are generally accepted within the medical community." *SSR* 96–2p.

Accordingly, based on the record before the ALJ, Dr. Pramuk's opinion should have been credited. On remand, unless the ALJ concludes, based on additional, substantial evidence, that Dr. Pramuk's opinion is not well-supported or is directly contradicted, it should be given controlling weight

### B.

█ The ALJ failed to apply the correct standard for evaluating Kershner's credibility regarding her subjective claims of pain. First, the ALJ held:

> In order to find the claimant "disabled" based on her subjective complaints of pain alone, and especially in the absence of any psychiatric explanation for these pain complaints, I would have to find the testimony *unusually persuasive.* I do not find the testimony to be that persuasive.

"An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *SSR* 96–7p. Even if the objective evidence itself could not establish the severity of the impairment, credible testimony about symptoms alone can suffice. *SSR* 96–3p. Our cases instruct ALJ's to use "ordinary techniques of credibility evaluation." *Smolen*, 80 F.3d at 1284. Instead, the ALJ required Kershner to be "unusually persuasive" in proving she was disabled due to her pain. The ALJ erred.

█ The ALJ also erred in concluding that the evidence showed that Kershner was malingering. The ALJ found that two of the doctors' reports described "behavior consistent with malingering." Neither of these reports supports this. Dr. Kundin found that Kershner was positive for several Waddell's signs.[2] The ALJ decided

**2.** The Commissioner had argued in its brief that Kershner had waived this argument by not raising it to the Appeals Council. However, the Commissioner filed a Rule 28(j) letter

that positive Waddell's signs meant malingering. He relied on a typed one-page summary of a 1980 article from the "SPINE Journal," that said, "3 out of 5 Waddel's (sic) signs indicate a person is unsuitable for surgery and indicated probable secondary gain, faking, malingering or a psychosis." The ALJ should not have relied on this reference for this purpose. First, the journal article is not part of the record, and the ALJ does not explain the source of the one-page summary. We have no idea what the journal article actually said or whether the summary is accurate. Second, even if we were to treat the summary as an accurate representation of the article, it merely recites that it is a list of "probable" conclusions. This is neither a list of "definite" conclusions, nor is it necessarily a complete list of the causes of Waddell's signs. Third, the ALJ should not have gone outside the record to perform his own medical research. Cf. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir.1990). Finally, there is no evidence that suggests that Dr. Kundin's use of the term matches the use in this twenty year old article of questionable accuracy.

With respect to a note by Dr. Eno in one medical report that appeared to reflect the physician's suspicion that Kershner perhaps overstated her pain that day, this single observation fails to counter the nearly uniform statements by everyone who examined Kershner that she complained of substantial, disabling pain, and that she appeared to be in at least some degree of pain.

Finally, in each of the ALJ's "examples" of Kershner's lack of credibility, he engaged in considerable speculation, wholly unsupported by substantial evidence on the current record, and we reverse on this ground as well. The ALJ hypothesized that Kershner "appear[ed] to have become more aggressive in her complaints of pain now that her sons are turning 18 possibly because she will no longer be able to collect Aid for Families with Dependent Children benefits, and needs other income." This demeaning supposition finds no support in the record. Although Kershner testified that it is a burden for her to walk ten feet down the hall or to visit her family on Christmas, and that she "visited" with family usually by telephone, the ALJ described Kershner as engaging in a "fair amount of sociable activities with friends." The fact that Kershner attempted to maintain a positive attitude was cast as evidence of a lack of credibility. The ALJ found her "oddly cheerful" given his expectation that she should be "in despair." Finally, the ALJ recounted that during the hearing, Kershner did change position with some frequency, but that she "moved smoothly and did not appear in any genuine pain." He stated that when Kershner did attempt a more comfortable position, her supportive family "rushed forward." He even speculated that through these acts of kindness "her family unwittingly 'enable[ed]' her to remain incapacitated." These unwarranted characterizations have no place in the ALJ's decision, and we reject them in the strongest terms. Such conclusions seem to diminish and belittle

---

on June 19, 2000, conceding that this argument was no longer valid given the Supreme Court's opinion in Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 2086, 147 L.Ed.2d 80 (2000).

The Commissioner continues to assert, however, that Kershner waived her right to make this argument by not raising it to the district court. Kershner has not waived this argument. In her district court brief, Kersh-

ner specifically discussed Dr. Kundin's "Waddell's signs" diagnosis and argued that it was not supported by substantial evidence. By making this argument, Kershner raised the argument sufficiently for the trial court to rule on it. See Gen. Signal Corp. v. MCI Telecomms., Corp., 66 F.3d 1500, 1511 (9th Cir.1995).

the four years that Kershner has spent visiting her own physician and other specialists; enduring tests, treatments and medication; consistently complaining about the same type of pain she experienced. The facts of this case are not remotely comparable to cases in which we have affirmed the ALJ's finding of lack of credibility. *See, e.g., Johnson v. Shalala,* 60 F.3d at 1433–34; *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir.1995). On remand, the ALJ may reconsider Kershner's credibility, but we note that the current state of the record does not support a conclusion that Kershner is not credible.

## IV.

We reverse and remand to the district court to remand to the ALJ. We hold that the ALJ must determine under the proper standard whether Kershner has established a medical impairment that could reasonably lead to the type of pain. We further hold that the ALJ is to decide whether—giving Kershner and Dr. Pramuk the deference they are due—Kershner's pain is so severe as to prevent her from performing basic work skills. We also emphasize that the law does not require Kershner to satisfy the "unusually persuasive" credibility standard that the ALJ imposed below.

REVERSED and REMANDED.

FERNANDEZ, Circuit Judge, concurring in the result.

FERNANDEZ, Circuit Judge.

Although I concur in the result, I write separately to make it clear that I do not agree with many of the statements in the disposition, which are another example of retrial by appellate record review, with little deference to the trier of fact, the agency, or the district court.

A reader of the disposition might believe that Kershner presented a strong case for benefits; she did not. Every doctor, including the treating physician, appeared to be puzzled by her extensive complaints of pain because none of the objective medical evidence appears to come even close to supporting claims of that severity. The doctors state that her physical deficits are mild, or she is completely normal physically, or that her pain lacks a good anatomic explanation, or that there is no evidence of any operative condition. Two of the doctors at least alluded to the possibility of malingering, or of some psychiatric problem,[1] although a brief evaluation suggested that there was no major psychiatric disorder. Moreover, Kershner has become dependent on pain medications, which even her treating physician is concerned about.

Of course, while all of that can give one pause, it does not justify creation of a new burden of persuasion—"unusually persuasive." Moreover, the ALJ should not have interpreted Dr. Kundin's use of the phrase "Waddell signs" by reference to a summary of a 20–year–old article, which was not part of the record.[2]

---

1. Dr. Kundin stated: "Mrs. Kershner's examination is significant for a number of positive Waddell's signs. Subjectively she is totally incapacitated. There are no objective findings to limit the patient's ability to do semi-sedentary work...." Dr. Eno, who commented on her ability to walk normally when distracted, also commented that "her exam is completely normal, really," and she probably needs some psychiatric help "in the setting of a pain clinic." A third doctor—Dr. Rob-

erts—found no "anatomic explanation" for her pain and suggested that she may need "cognitive therapy."

2. On the other hand, there is no basis for a decision that the article upon which the summary was based is of "questionable accuracy," especially in light of the fact that "[w]e have no idea what the journal article actually said."

Nonetheless, I would not downplay or overlook the significant doubts engendered by the medical opinions in this case. Nor would I disparage all contrary views. Nor would I suggest (or advocate) that Kershner truly is credible. The record does cry out for supplementation and further explication of the issues raised by the evidence that is before us, but I would not minimize the evidentiary problems it presents, and I would not shove the ALJ or the agency toward a finding of disability.

Thus, I concur in the result only.